**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**KEY WEST DIVISION**

| | | |
|---|---|---|
| BRADLEY DAVIN, Individually and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>KEURIG GREEN MOUNTAIN, INC.,<br><br>Defendant. | ) | CASE NO. 26-CV-10007 |

**DEFENDANT KEURIG GREEN MOUNTAIN, INC.'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT AND MOTION TO STRIKE CLASS ALLEGATIONS**

# TABLE OF CONTENTS

**INTRODUCTION** ........ 1
**FACTUAL BACKGROUND** ........ 3
**I. The Prior Lawsuit.** ........ 3
**II. The Complaint.** ........ 4
**LEGAL STANDARDS** ........ 5
**I. Rule 12(b)(1).** ........ 5
**II. Rule 12(b)(6).** ........ 6
**ARGUMENT** ........ 6
**I. Plaintiff Lacks Standing.** ........ 6
*A. Plaintiff's Allegations Do Not Support an Injury In Fact.* ........ 6
*B. Publix's Money Back Guarantee Moots Plaintiff's Injury.* ........ 8
**II. Plaintiff Has Not and Cannot Plead a FDUTPA Claim.** ........ 8
*A. Plaintiff Has Not Pled an Unfair or Deceptive Act or Practice.* ........ 8
*B. Plaintiff Failed to Allege a Reasonable Person Would Be Deceived or Misled.* ........ 11
*C. Plaintiff Did Not Suffer Actual Damages.* ........ 13
**III. Plaintiff's Multi-State Consumer Protection Statute Claim (Count II) Is Improper.** 14
**IV. Plaintiff's Fraud Claim (Count III) Is Deficient.** ........ 16
**V. Plaintiff Has Not Satisfied Rule 9(b).** ........ 16
**VI. The Class Allegations Should Be Stricken.** ........ 18
**CONCLUSION** ........ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Certegy Check Servs., Inc.*,
2016 WL 5843176 (M.D. Fla. Oct. 4, 2016) ....................9

*In re Apple Processor Litig.*,
2023 WL 5950622 (9th Cir. Sep. 13, 2023) ....................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*,
168 F.3d 967 (7th Cir. 1999) ....................9

*Barbara's Sales, Inc. v. Intel Corp.*,
879 N.E.2d 910 (Ill. 2007)....................15

*BBX Cap. v. Fed. Deposit Ins. Corp.*,
956 F.3d 1304 (11th Cir. 2020) ....................5

*Blair v. Wachovia Mortg. Corp.*,
2012 WL 868878 (M.D. Fla. Mar. 14, 2012) ....................9, 10

*Brownell v. Starbucks Coffee Co.*,
681 F. Supp. 3d 27 (N.D.N.Y. 2023)....................15

*Bush v. Mondelez Int'l, Inc.*,
2016 WL 7324990 (N.D. Cal. 2016) ....................9

*Clear Marine Ventures Ltd. v. Brunswick Corp.*,
2010 WL 528477 (S.D. Fla. Feb. 11, 2010) ....................14

*Coffie v. Fla. Crystals Corp.*,
460 F. Supp. 3d 1297 (S.D. Fla. 2020) ....................5

*Conigliaro v. Norwegian Cruise Line Ltd.*,
No. 05-21584-CIV, 2006 WL 7346844 (S.D. Fla. Sept. 1, 2006)....................19

*Connick v. Suzuki Motor Co.*,
174 Ill. 2d 482 (1996) ....................15

*Corsello v. Lincare, Inc.*,
428 F.3d 1008 (11th Cir. 2005) ....................16

*Cummings v. Growers*,
2023 WL 3487005 (N.D. Fla. May 15, 2023) ....................13, 16

*Cutler v. Voya Fin., Inc.*,
2019 WL 1112379 (S.D. Fla. Jan. 15, 2019) ....................16

*D.H.G. Props. v. Ginn Cos., LLC*,
2010 WL 5584464 (M.D. Fla. Sep. 28, 2010) ....................18

*Dixon v. Allergan USA, Inc.*,
2015 WL 12915671 (S.D. Fla. May 28, 2015) ....................16, 17

*Durant v. Big Lots, Inc.*,
2024 WL 3321879 (M.D. Fla. July 3, 2024) ....................2, 3

*Figueredo v. Tropicale Foods, LLC*,
2024 WL 1462404 (S.D. Fla. Apr. 4, 2024) ....................11, 12

*FTC v. Mary Carter Paint Co.*,
382 U.S. 46 (1965)....................9

*Griffin v. Verizon Commc'ns Inc.*,
746 F. App'x 873 (11th Cir. 2018) ....................3

*Gyani v. lululemon athletica inc.*, 2025 WL 548405, at *4 (S.D. Fla. Feb. 19, 2025) ....................7, 11

*Henry v. Nissin Foods (U.S.A.) Co. Inc.*,
2023 WL 2562214 (E.D.N.Y. Mar. 17, 2023)....................11

*Hitchcock v. Scipione*,
2013 WL 6184037 (M.D. Fla. Nov. 25, 2013) ....................11

*Jackson v. Anheuser-Busch InBev SA/NV, LLC*,
2021 WL 3666312 (S.D. Fla. Aug. 28, 2021)....................16, 17, 18, 19

*Jackson v. Motel 6 Multipurpose, Inc.*,
130 F.3d 999 (11th Cir. 1997) ....................19

*Kubany by Kubany v. Sch. Bd. Of Pinellas Cnty.*,
149 F.R.D. 664 (M.D. Fla. 1993)....................19

*Lawson v. Life of the South Ins. Co.*,
286 F.R.D. 689 (M.D. Ga 2012) ....................19

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................5

*Marketran, LLC v. Brooklyn Water Enters., Inc.*,
2017 WL 1292983 (S.D. Fla. Jan. 31, 2017) ....................14

*Marrache v. Bacardi U.S.A., Inc.*,
17 F.4th 1084 (11th Cir. 2021) ....................13, 14

*McGowan v. Faulkner Concrete Pipe Co.*,
659 F.2d 554 (5th Cir. 1981) ....................18

*Parr v. Maesbury Home, Inc.*,
2009 WL 5171770 (M.D. Fla. Dec. 22, 2009)....................8, 9

*Piescik v. CVS Pharmacy, Inc.*,
576 F. Supp. 3d 1125 (S.D. Fla. 2021) ....................11, 12

*Pop v. LuliFama.com LLC*,
145 F.4th 1285 (11th Cir. 2025) .................... *passim*

*Ramirez v. Kraft Heinz Foods Co.*,
2023 WL 4788012 (S.D. Fla. July 27, 2023)....................6, 7, 8

*Roberson v. Health Career Inst. LLC*,
No. 22-CV-81883, 2024 WL 5690285 (S.D. Fla. Aug. 21, 2024) ....................19

*Sanchez v. Team Health, LLC*,
2020 WL 12188439 (S.D. Fla. May 18, 2020) ....................17

*Skurowitz v. Bank of Am., N.A.*,
2023 WL 1810304 (S.D. Fla. Feb. 8, 2023) ....................6

*Smith v. Keurig Green Mountain, Inc.*,
2023 WL 2250264 (N.D. Cal. Feb. 27, 2023) .................... *passim*

*Sol. Z v. Alma Lasers, Inc.*,
2013 WL 12246356 (S.D. Fla. Jan. 22, 2013) ....................8

*In re Tupperware Brands Corp. Sec. Litig.*,
2023 WL 5091802 (11th Cir. Aug. 8, 2023)....................15

*Young v. Wells Fargo & Co.*,
671 F. Supp. 2d 1006 (S.D. Iowa 2009) ....................15

*Zapadinsky v. Blue Diamond Growers*,
2023 WL 5116507 (E.D. Wis. Aug. 7, 2023)....................13

*Zarrella v. Pac. Life Ins. Co.*,
755 F. Supp. 2d 1218 (S.D. Fla. 2010) ....................16

**Other Authorities**

16 C.F.R. Ch. I....................9

16 C.F.R. § 260.12(b)(2)....................9, 10

Fla. Stat. § 501.203(3)....................9

Defendant Keurig Green Mountain, Inc. ("Keurig") respectfully submits this Motion to Dismiss the Amended Class Action Complaint [D.E. 9] ("Complaint") filed by Plaintiff Bradley Davin ("Plaintiff" or "Davin") and Motion to Strike Class allegations pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(f) (the "Motion").

**INTRODUCTION**

The Complaint alleges that Keurig's single serve coffee pods ("Product(s)" or "Pods") are misleadingly advertised as "recyclable" because various jurisdictions do not accept them for recycling. Compl. ¶ 1. But Keurig does not claim that the Products will ultimately be recycled in all jurisdictions. In fact, it clearly and conspicuously does the opposite—Plaintiff essentially ignores the qualifying statement to "Check Locally – Not Recycled In Many Communities," which appears directly below the word "recyclable" and is connected to it by an asterisk. No reasonable consumer could possibly be confused by this advertising.

Indeed, adding this qualifying language to the packaging was the injunctive relief agreed to by Keurig in a 2022 nationwide class action settlement in the Northern District of California. *See Smith v. Keurig Green Mountain, Inc.,* 2023 WL 2250264, at *1 (N.D. Cal. Feb. 27, 2023) ("Class Settlement" or "*Smith* Final Judgment"). The *Smith* case challenged recyclable claims on Keurig packaging, and the *Smith* Final Judgment—including the qualifying language stating that the Products are not accepted in "many communities"—constitutes a litigated, final judgment on the merits.

In Keurig's Motion to Dismiss Plaintiff's First Complaint, Keurig sought dismissal because: (1) Plaintiff's claims were barred by *res judicata* following the *Smith* Final Judgment, and (2) if Plaintiff was a class member in *Smith*, the release in the Class Settlement precluded Plaintiff's claims. [D.E. 7]. In amending the Complaint, Plaintiff confirms that Keurig's *res judicata* argument was legally correct by conveniently now alleging that he only bought the Product beginning in 2024—an allegation intended to circumvent the preclusive effect of the *Smith* Final Judgment. However, even if *Smith* does not directly preclude Plaintiff's claims, which Keurig does not concede,[1] the *Smith* Court's approval on a nationwide basis of the "Check Locally – Not Recycled In Many Communities" disclaimer demonstrates that reasonable consumers are

[1] Should Plaintiff's claims survive the instant Motion, Keurig reserves the right to seek discovery on whether Plaintiff is, in fact, a member of the *Smith* class and to revisit whether the *Smith* Final Judgment precludes Plaintiff's claims at the appropriate time.

not deceived by the Product's label.

Plaintiff also absurdly amends the Complaint's class allegations to remove any class member in *Smith*. But such a class as now proposed is untenable and illogical because it is impossible to practically determine on a class basis which consumers of the Pods are subject to *Smith* and therefore cannot be a class member here. As a result, the class allegations should be stricken.

The Complaint additionally fails because Plaintiff lacks standing, did not suffer actual damages, and fails to state a fraud claim. Plaintiff allegedly purchased an undetermined quantity of the Product during an undefined period at undetermined locations(s). Plaintiff only clarifies that he first purchased the Product in 2024 and his "most recent purchase was at a Publix Store for approximately $13.99 within the last 3 months" in Monroe County, Florida. Compl. ¶ 9. Plaintiff does not contend that he does not enjoy the Product, that the Product is not made out of a recyclable material, or that Pods he purchased were not in fact put into recycling streams after use. In fact, Plaintiff claims that he placed the Products in his recycling. *Id.* Nevertheless, based only on the word "recyclable," Plaintiff concludes, without support, he paid a "premium" price for the $13.99 Product, which he speculates would otherwise cost less. *Id.* ¶ 39(f). Instead of seeking a refund from Publix, which remedy is well-known as available to unsatisfied consumers in its stores within this state, Plaintiff elected to file this putative class action alleging violation of the Florida Deceptive and Unfair Trade Practice Act ("FDUTPA"), violation of "state consumer protection statutes," and fraud.

This Complaint being filed can only be understood in the context of Plaintiff's attorney, William Wright, who is one of a group of attorneys filing the same repeat consumer claims in different courts and jurisdictions with limited, if any, success. *See Durant v. Big Lots, Inc.*, 2024 WL 3321879, at *5 (M.D. Fla. July 3, 2024). This action is one of approximately 116 consumer cases filed by attorney Wright in the last five years.[2] It suffers from the same notorious deficiencies

[2] Until recently, attorney Wright acted as attorney Spencer Sheehan's proxy in Florida, filing approximately fifty-two cases in Florida District Courts on Sheehan's behalf in just over two years. During this time, Sheehan largely failed to properly submit *pro hac vice* applications in cases filed outside of New York. In *Durant*, the Court admonished Sheehan and Wright for frivolousness of filing a claim in Florida that had already been rejected in New York, as well as Sheehan participating in the case without filing a *pro hac vice* application. *See Durant*, 2024 WL 3321879, at *5. Although attorney Wright claimed he was unaware of the New York case's existence, the Court explained that such a statement "not only stretches the bounds of his credibility to breaking

as the other lawsuits and should be dismissed as with prejudice for the reasons detailed herein.

## FACTUAL BACKGROUND

### I. The Prior Lawsuit.[3]

In 2018, Plaintiff Kathleen Smith brought a consumer class action ("*Smith* Action") against Keurig alleging that "Defendant's 'recyclable' labeling on its plastic single-serve coffee pods . . . is false and misleading." *Smith* Final Judgment. The *Smith* Action alleged the violation of various consumer fraud statutes, because despite advertising the pods as "recyclable," "municipal recycling facilities are not properly equipped to handle the pods" and even if they can, the pods "often end up in landfills anyway[s]." *Id.* at 1.

On February 24, 2022, the parties filed a stipulation of settlement with the Court. *See* Ex. A ("*Smith* Settlement Agreement"). "Class Members" were defined as "all persons or entities in the United States who purchased the Challenged Products during the Class Period." *Id.* at 22. As part of the settlement relief, the parties agreed that "Keurig and its Affiliates shall not use a Recycling Representation without clearly and prominently including the qualifying statement, 'Check Locally – Not Recycled in Many Communities.'" *Id.* at 11. This "qualifying statement" had to appear "in close proximity to, and in a font size no smaller than 55% of the font size of, the Recycling Representation." *Id.* The *Smith* Settlement Agreement also attached a "representative example of the new qualifying language and font size ratio compliant" with the settlement relief:




---

point but, if true, evidences his unwillingness to undertake even the most basic act of diligence to verify the veracity and integrity of his filings in federal court." *Id.* at *8 n. 17.

[3] Courts "typically take judicial notice of record documents from other judicial proceedings" and can consider them in deciding a motion to dismiss under Federal Rule of Civil Procedure 12. *Griffin v. Verizon Commc'ns Inc.*, 746 F. App'x 873, 876 (11th Cir. 2018). Therefore, the Court can consider the records from the prior lawsuit. Further, Plaintiff incorporates this class action by reference, admitting that it was settled in 2023. *See* Compl. ¶ 17.

*Id.*, Ex. H. The Class Members released "all claims . . . existing now or ***in the future***, arising out of or related to (1) Recycling Representations made with respect to the Challenged Products prior to the Graphics Transition End Date and/or (2) Settlement Recycling Representations made with respect to the Challenged Products."[4] *Id.* at 20 (emphasis added).

On February 27, 2023, the Court granted final approval of the class action settlement following a final fairness hearing. *See Smith* Final Judgment. The Court approved the class definition, which was "all Persons in the United States who purchased Keurig's Pods for personal, family or household purposes within the Class Period." *Id.* at 3. The Class Period was from June 8, 2016, to the date Class notice was first published on or about August 2022. *Id.* In approving the Settlement Agreement, the Court found that "the proposed settlement [was] fair, adequate, and reasonable, and that the Class Members received adequate notice." *Id.* at 7. The Court also found that "the Settlement provides significant injunctive relief"—*i.e.*, the requirements that Keurig include qualifying language in its labels—"that gets at the heart of [the] complaint by requiring [Keurig] to change its labeling and advertising nationwide and on its website." *Id.* at 10.

**II. The Complaint.**

Despite Keurig changing its labels and packaging to comply with the *Smith* Final Judgment,[5] Plaintiff claims that Keurig's labeling of its Pods is deceptive because they are labeled "recyclable."[6] Compl. ¶¶ 1, 20-21. Concerning the qualifying language, Plaintiff only alleges it is in "fine print that is visually separated from the primary recyclability claim and blends into the background, making it difficult to notice or read." *Id.* ¶ 21. Although Plaintiff concedes that Pods are made from a "recyclable" material, polypropylene #5 plastic, this "theoretical definition of recyclability" purportedly ignores that "[m]ost recycling centers in the United States do not recycle

---

[4] "Recycling Representation" "means any representation to any third party (in any labeling, marketing, advertising or otherwise) that the Challenged Products are recyclable (through use of the word 'Recycling' or any variation thereof or through the conspicuous use of the Chasing Arrow symbol or any variation thereof)." Ex. A at 6, ¶ 37. "Settlement Recycling Representation" "means any representation made to any third party (in any labeling, marketing, advertising or otherwise) in accordance with the terms" of the settlement agreement's injunctive relief. *Id.* at 7, ¶ 45.

[5] Citing documents addressing the Pods' labeling *prior* to the *Smith* Final Judgment, Plaintiff claims Keurig has been long aware about environmental impact. *See* Compl. ¶¶ 14-18.

[6] Plaintiff's Complaint largely appears to copy a letter from Truth In Advertising to the Bureau of Consumer Protection at the Federal Trade Commission sent on January 26, 2026, three days before this litigation was filed. *See, e.g.*, Compl. ¶ 14, n. 1.

K-Cups due to their small size, irregular shape, multi-material construction, frequent contamination issues, and unfavorable economic factors." *Id.* ¶¶ 1-2. Citing to a study by SCS Engineering and "Recycling Facility Statements," Plaintiff claims because Pods are sometimes not accepted at recycling centers, Pods are not "recyclable." *Id.* ¶¶ 26-33.

Plaintiff is a citizen of Monroe County, Florida, who alleges that he purchased the Products from "a local retailer on numerous occasions throughout the class period." *Id.* ¶ 8. Prior to purchase, Plaintiff asserts that he "saw and read the packaging" and "reasonably believed that the product he purchased was recyclable." *Id.* ¶ 9. In purported reliance on the labeling, Plaintiff purchased the product and "placed them in his recycling." *Id.* Although he provides three "examples" of packaging, he does not allege he viewed these specific packages. *Id.* ¶¶ 20-21. Plaintiff claims that he first purchased the product in 2024 and his "most recent purchase was at a Publix Store for approximately $13.99 within the last 3 months." *Id.* ¶ 9. And, "[i]f Plaintiffs (sic) had known that the Products were not recyclable, Plaintiffs (sic) would not have purchased the Product(s) and would have instead sought out single-serve pods . . . that are otherwise compostable, recyclable, or reusable. At a minimum, Plaintiff would not have paid as much as he did if he had known the Products could not be recycled." *Id.* ¶ 3.

The Complaint contains no further specific allegations regarding Plaintiff or his purchases of the Product. Although Plaintiff amended to state that he placed the Product in recycling, there is no allegation that Plaintiff's efforts to recycle the Product failed.

## LEGAL STANDARDS

### I. Rule 12(b)(1).

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III[,] which the party invoking federal jurisdiction has the burden of proving." *BBX Cap. v. Fed. Deposit Ins. Corp.*, 956 F.3d 1304, 1312 (11th Cir. 2020) (quotation omitted). "Article III standing requires that a 'plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Coffie v. Fla. Crystals Corp.*, 460 F. Supp. 3d 1297, 1304 (S.D. Fla. 2020). An injury in fact requires "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotation marks omitted). Plaintiffs who do not allege an injury in fact lack standing to pursue claims. *Id.* at 578.

**II. Rule 12(b)(6).**

A motion to dismiss should be granted if plaintiff is unable to articulate "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and rise above speculation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). On such motion, the "court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff." *Skurowitz v. Bank of Am., N.A.*, 2023 WL 1810304, at *2 (S.D. Fla. Feb. 8, 2023). However, "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1 (citation omitted). "[O]nce a court identifies pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth, it must determine whether the well-pled facts state a claim to relief that is plausible on its face." *Id.* at 2 (citation omitted).

**ARGUMENT**

**I. Plaintiff Lacks Standing.**

Plaintiff lacks Article III standing to bring his claim for two reasons: (1) Plaintiff's conclusory allegations of a "premium price" are insufficient, and (2) Publix, where Plaintiff bought the Product, offered a money-back guarantee on the Product.

*A. Plaintiff's Allegations Do Not Support an Injury In Fact.*

A conclusory allegation that a plaintiff paid "a premium price" is, by itself, insufficient to support an injury in fact. *See Ramirez v. Kraft Heinz Foods Co.*, 2023 WL 4788012, at *4 (S.D. Fla. July 27, 2023) (complaint failed to allege injury in fact where it lacked factual allegations of price without alleged deceptive marketing). In *Valiente v. Publix Super Mkts., Inc.*, the court dismissed a similar class action for lack of standing under a "premium price" theory where the plaintiff alleged Publix's cough drop packaging was misleading. 2023 WL 3620538, at *3 (S.D. Fla. May 24, 2023). There, plaintiff alleged that he purchased cough drops, "apparently attracted by the phrase 'honey-lemon,' [and] the 'pictures of these ingredients.'" *Id.* at *1. The labels were purportedly misleading because they suggested the product contained "a non-*de minimis* amount of lemon ingredients" even though the product's ingredient list did "not list any lemon ingredient." *Id.* Plaintiff claimed that Publix could "sell the product at the 'premium price'" because of the "misleading representations and omissions." *Id.* Thus, plaintiff's "only alleged injury [was] that had he . . . known the truth, [he] would not have bought the product or would have paid less for it." *Id.* at *3 (cleaned up).

The *Valiente* Court found these allegations did not satisfy Article III standing. Without

alleging the product was "defective. . . or otherwise [was] so flawed as to render [it] worthless," plaintiff failed to "concretely tie the value of the cough drops to [the] purported representations." *Id.* at *5. And, "general allegations that consumers . . . may understand Publix's representations in a way that allow it to sell the cough drops at a premium price" did not support that the cough drops were sold at a "premium price" due to the misrepresentations. *Id.* Thus, plaintiff's injury was his "subjective, personal expectations" of the cough drops, and "a plaintiff does not have standing to sue a defendant merely because of his or her buyer's remorse." *Id.* (citation omitted).

Similarly, in *Gyani*, the Court found that allegations of a "greenwashing" campaign were not enough to support a "price premium" theory. *Gyani v. lululemon athletica inc.*, 2025 WL 548405, at *4 (S.D. Fla. Feb. 19, 2025). The plaintiffs alleged Lululemon made certain representations in a "Be Planet" campaign which were deceptive. *Id.* at *1-2. Plaintiffs alleged that absent those representations they "would not have paid as much for such products and, thus, they did not receive the benefit of the bargain, and they suffered out-of-pocket loss." *Id.* at *4. However, the court held that plaintiffs failed to "tie the value of the product to any purported misrepresentation," and the "blanket assertions [were] insufficient to constitute an economic injury." *Id.* at *4-5.

Plaintiff lacks standing for the same reason as *Valiente* and *Gyani*—Plaintiff claims that Keurig "misrepresented the recyclability of its Products" and those representations "induced consumers like Plaintiff to purchase the Products for their purported environmental benefits while charging a price premium." Compl. ¶ 39(f). Plaintiff also claims that the class members "have been deprived of the benefit of the bargain, having acquired products that did not conform to the representations made." *Id.* ¶ 39(g). However, apart from these conclusory allegations, Plaintiff fails to tie the misrepresentation to the value of the Product. Although Plaintiff attempts to rely on purported "expert findings" on recyclability, these findings do not support that Plaintiff paid a premium price for the Product. *Id.* ¶¶ 27-29. Further, Plaintiff cannot, without support, conclude that "[t]he economic injury suffered by Plaintiff and Class Members can be measured on a class-wide basis through evidence, including analysis of Defendant's pricing, internal marketing and valuation materials, consumer demand for environmentally responsible products, conjoint survey analysis, hedonic regression analysis, or other methods capable of isolating the price premium attributable to recyclability representation." *Id.* ¶ 52. Such a statement, without providing any substantive allegation or specifics, concedes Keurig's point that Plaintiff's allegations of an injury

are unsupported. Thus, Plaintiff lacks Article III standing.

*B. Publix's Money Back Guarantee Moots Plaintiff's Injury.*

Plaintiff also failed to allege any cognizable injury in fact because Publix offered a money-back guarantee. "Courts in this District have found that Publix's Refund Policy makes it impossible for plaintiffs to have suffered an economic injury in fact," negating standing. *Koutouzis v. Publix Super Mkt.'s, Inc.*, 2026 WL 679097, at *7 (S.D. Fla. Mar. 10, 2026). In *Valiente*, the court also found the plaintiff lacked standing because Publix provided a money-back guarantee disclosed on the back of the package. 2023 WL 3620538, at *2-3. Plaintiff failed to address this "money-back guarantee," and the court found his injury was "mooted." *Id.* at *3; *see also Dawkins v. Publix Super Mkt.'s, Inc.*, 796 F. Supp. 3d 1192, 1197 (S.D. Fla. 2025) ("[T]he 'Publix Guarantee and Publix Promise' moots any economic injury Plaintiff suffered.").

The only allegation regarding Plaintiff's purchase is that it was at Publix. *See* Compl. ¶ 9. Plaintiff alleges no other specific purchases nor any stores or manners of purchases. And, even if he had, he does not allege that a refund was impossible. Regardless, because Publix offered a money-back guarantee, which is well established in this District, Plaintiff did not suffer an economic injury, and Plaintiff lacks Article III standing for this additional reason. *Koutouzis*, 2026 WL 679097, at *9 (plaintiff lacked standing when she received a refund from Publix or, for the products she did not, Plaintiff did "not allege that she could not receive a refund, but rather that it was either too onerous to do so or that she chose not to.").

**II. Plaintiff Has Not and Cannot Plead a FDUTPA Claim.**

To state a claim under FDUTPA, Plaintiff must allege: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Sol. Z v. Alma Lasers, Inc.*, 2013 WL 12246356, at *5 (S.D. Fla. Jan. 22, 2013). Because Plaintiff cannot plead any of these elements, the FDUTPA claim should be dismissed with prejudice.[7]

*A. Plaintiff Has Not Pled an Unfair or Deceptive Act or Practice.*

An essential element of a FDUTPA claim is an alleged "deceptive or unfair practice," which is satisfied by alleging a *per se* or "traditional" violation. *E.g.*, *Parr v. Maesbury Home, Inc.*, 2009 WL 5171770, at *7 (M.D. Fla. Dec. 22, 2009). A *per se* deceptive or unfair act requires asserting a violation of "[a]ny rules promulgated pursuant to the Federal Trade Commission Act"

[7] Count II seeks to bring a claim for violation of state consumer protection statutes based on similar elements. If the FDUTPA claim fails, Count II should be dismissed for the same reasons.

or "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(a), (c); *see Parr*, 2009 WL 5171770, at *7. However, simply citing a rule or statute, without showing a violation of that rule or statute, is insufficient to allege a *per se* FDUTPA violation. *Blair v. Wachovia Mortg. Corp.*, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012) (merely alleging violation of a rule is insufficient to negate obligations of pleading in *per se* FDUTPA claim). Rather, a plaintiff must plead a factual basis to conclude there was a violation of the law, rule, or statute and not just rely on conclusory allegations. *Id.*

In an attempt to support a *per se* FDUTPA claim, Plaintiff alleges that Keurig's "recyclable" marketing violates the Federal Trade Commission's ("FTC") Guides for the Use of Environmental Marketing Claims ("Green Guides"). Compl. ¶¶ 33-37. However, the Green Guides cannot support a *per se* FDUTPA claim. A *per se* violation lies where there is a violation of "rules promulgated" by the FTC. Fla. Stat. § 501.203(3). In contrast, "guides are administrative *interpretations* of laws administered by the [FTC] for the guidance of the public in conducting its affairs in conformity with legal requirements. They provide the basis for *voluntary* and simultaneous abandonment of unlawful practices by members of industry." 16 C.F.R. Ch. I, Subch. B, Pt. 17 (emphasis added); *see also FTC v. Mary Carter Paint Co*., 382 U.S. 46, 47–48 (1965) (FTC guides are not "fixed rules" but informational guidance); *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 973 n.4 (7th Cir. 1999) (similar). Accordingly, the Green Guides are purely advisory, they cannot be violated, and they cannot support a *per se* FDUTPA claim. *See, e.g.*, *Bush v. Mondelez Int'l, Inc.*, 2016 WL 7324990, at *3 (N.D. Cal. 2016) (agency guidance does not determine whether a label is misleading).

Further, even if Plaintiff correctly identified a FDUTPA predicate, Plaintiff failed to allege that Keurig violated the Green Guides. *See Alexander v. Certegy Check Servs., Inc.*, 2016 WL 5843176, at *4 (M.D. Fla. Oct. 4, 2016) ("Because Plaintiff has not successfully alleged a violation of the [predicate statute], the Court declines to address whether Plaintiff alleges a *per se* FDUTPA violation."). As Plaintiff states, "*unqualified* recyclable claims are appropriate only where recycling facilities are available to a substantial majority of consumers." Compl. ¶ 34 (citing 16 C.F.R. § 260.12(b)) (emphasis added). When recycling may not be available to a "substantial majority of consumers . . . where the item is sold, marketers should qualify all recyclable claims." 16 C.F.R. § 260.12(b)(2). Plaintiff claims that the "Green Guides further advise that vague or

general qualifications may be insufficient where recycling availability is limited," Compl. ¶ 37, but Plaintiff misstates the law. In fact, the Green Guides explicitly instruct marketers to "qualify all recyclable claims," providing alternative qualifications. 16 C.F.R. § 260.12(b)(2).

Keurig did exactly as instructed by the Green Guides. Plaintiff alleges that the Products are not recyclable in a substantial majority of communities, and Keurig as a result includes the qualifier that consumers should "check locally" and "not recycled in many communities." Compl. ¶¶ 34-36. These qualifications are substantially similar to the qualifications suggested by the Green Guides. Thus, Plaintiff has not and cannot allege a violation of the Green Guides.

In addition, Plaintiff failed to adequately allege that the conduct of Keurig is deceptive so as to support a "traditional violation" of FDUTPA. *Blair*, 2012 WL 868878, at *2-3 (quotation marks omitted). "A deceptive act or unfair practice may be found when there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Id.* (internal quotations omitted).

In *Curtis v. 7-Eleven, Inc.*, the Northern District of Illinois addressed a similar purported deceptive practice. 2022 WL 4182384, at *2 (N.D. Ill. Sept. 13, 2022). The plaintiff argued that label of "recyclable" on the products was deceptive when, although the products were made of recyclable material, the products were not always accepted by recycling facilities. *Id.* at *2-3. In other words, "she reasonably understood that the products *would actually be recycled* if she placed them for recycling with her municipal recycling service." *Id.* at *2. The Court found that labeling the products "recyclable" under these circumstances was not deceptive. *Id.* at 14. The "plain meaning of [recyclable] is straight forward . . . . [It] simply means 'capable of being recycled.'" *Id.* at *12. Given this definition, the term "recyclable" defined the "product itself, meaning its intrinsic character [and is] not about what happens to the product after it goes into the recycling bin." *Id.* at *13. Put another way, "[i]t is not about the next stage of the recycling process, or the proximity of recycling facilities in the local area, or the economics of the recycling industry." *Id.* Because "recyclable" means "can be recycled" and not "will be recycled" or "likely to be recycled," the plaintiff's consumer fraud claim was dismissed. *Id.* at *17.

Similarly here, Keurig is not promising that the Product will always be recycled but stating that it can be recycled, which is confirmed by the asterisk and clarification right under the term

"recyclable" indicating that a consumer should "check locally."[8] Thus, Plaintiff cannot allege a deceptive act which supports a "traditional" violation of FDUTPA.

*B. Plaintiff Failed to Allege a Reasonable Person Would Be Deceived or Misled.*

The FDUTPA claim also fails because he cannot support causation by showing that the alleged misrepresentations "would have deceived an objectively reasonable person." *Hitchcock v. Scipione*, 2013 WL 6184037, at *1 (M.D. Fla. Nov. 25, 2013). "Deceptive advertising claims under state consumer protection statutes should take into account all the information available to consumers and the context in which that information is provided and used." *Piescik v. CVS Pharmacy, Inc.*, 576 F. Supp. 3d 1125, 1132 (S.D. Fla. 2021). "[W]here Plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations or labels or other advertising, dismissal on the pleadings may well be justified." *Id.* at 1133. "Federal courts routinely conclude that the presence of a disclaimer, considered in context, precludes the finding that a reasonable consumer would be deceived by the defendant's conduct." *Figueredo v. Tropicale Foods, LLC*, 2024 WL 1462404, at *3 (S.D. Fla. Apr. 4, 2024) (collecting cases, and dismissing claim filed by Wright because clear disclaimers dispelled any confusion for a reasonable consumer); *see also Henry v. Nissin Foods (U.S.A.) Co. Inc.*, 2023 WL 2562214, at *6 (E.D.N.Y. Mar. 17, 2023) ("Courts can, at motion to dismiss, consider the efficacy of a disclaimer in dispelling a misleading impression created elsewhere on a label.").

Judge Middlebrooks addressed a similar situation—where an asterisk clearly disclosed the meaning of a term on a product's label—in *Piescik*, a case filed by Wright. The plaintiff alleged that a hand sanitizer label was deceptive because it stated that it "kill[s] 99.99% of germs*" but did "not actually kill 99.99% of *all* germs." *Piescik,* 576 F. Supp. 3d at 1128. The defendant argued that this belief was objectively unreasonable due to "the asterisk and label on the back of the product stating that it is 'effective at eliminating 99.99% of many common harmful germs and bacteria in as little as 15 seconds.'" *Id.* at 1132. Among other reasons, the court found that "a reasonable consumer would not be expected to ignore the asterisk and the information it leads to," and such a disclosure can "rebut a claim of deception." *Id.* at 1133. Because the hand sanitizer

[8] To the extent Plaintiff argues that Keurig's Sustainability Report and Sustainability Webpage also constitute deceptive practices, such claims can be rejected out of hand. There is no allegation that Plaintiff ever saw this advertising or that it is tied to a specific product. *See Gyani,* 2025 WL 548405, at *5 (plaintiff failed to allege deceptive act regarding products sold to plaintiffs when relied on "goals and promises contained in a press release or on [a] website.").

label's "accurate information . . . contribute[d] to the implausibility that reasonable consumers would be deceived by some other information or assumption," the FDUTPA claim failed. *Id.* at 1134.

A similar situation was also recently addressed by Judge Altman in *Figueredo*. 2024 WL 1462404, at *3. The plaintiff, also represented by Wright, tried to allege that the packaging's use of Spanish phrases constituted "express or implied deceptive 'representations or omissions' that the product was made in Mexico." *Id.* However, the packaging did not say that the product was made in Mexico, and the plaintiff conceded that "the back and lower packaging reveals [that] it was made in Ontario, California." *Id.* (cleaned up). The Court found that the disclaimer clearly dispelled any possible confusion *Id.* at *3-4. The packaging contained a "factually accurate, unambiguous statement" about the product's origin "that would clarify to any reasonable consumer that the Product is made in America." *Id.* Further, when the package was viewed as a whole, none of the purportedly "deceptive features of the packaging eclipse[d] the accurate disclosures statement." *Id.* at *4 (cleaned up).

Likewise here, Keurig is not promising that the Product will always be accepted by recycling entities but is stating it can be recycled, confirmed by the asterisk and clarification right under the term "recyclable" indicating that a consumer should "check locally – not recycled in many communities." Compl. ¶¶ 23-24, 36. These statements are located clearly, directly adjacent to the "recyclable" statement. Like the plaintiff in *Figueredo*, Plaintiff here acknowledges that there is an unambiguous disclosure, but claims that it is "visually separate from the primary recyclability claim." Compl. ¶ 36. Not so. As in *Figuerdo* and *Piescik*, an asterisk clearly discloses what "recyclable" means and dispels any possibility that a reasonable consumer would be deceived. The disclaimer is also located directly under the "recyclable" label, is in distinct font, and no deceptive features "eclipse" the unambiguous labeling. The materials Plaintiff refers to regarding the potential recyclability of the Products does not alter this conclusion—Plaintiff agrees that the issue is not that the Product is not recyclable altogether, just that it is not recyclable in certain areas. *See* Compl. ¶¶ 26-33. The packaging clearly discloses this.

Furthermore, this packaging, with the qualifiers directly next to "Recyclable," is nearly the exact design approved in the *Smith* Final Judgment that was determined by the court to be non-deceptive:







*Compare Smith* Settlement Agreement, Ex. H (approved label on left), *with* Compl. ¶ 24 (label at issue on right); *see also Smith* Final Judgment at 10 ("the Settlement provides significant injunctive relief that gets at the heart of [the] complaint by requiring [Keurig] to change its labeling . . ."). To put a finer point on it, the *Smith* Court reviewed a near identical label to the one at issue here. In approving the class settlement and issuing its final judgment, it found that the new label—*i.e.*, including qualifying language—constituted "significant injunctive relief that gets at the heart of [the] complaint by requiring [Keurig] to change its labeling and advertising nationwide and on its website." *Smith* Final Judgment at 10. Surely Plaintiff cannot take the position that a Northern District of California federal court approved qualifying language that is deceptive to a reasonable consumer. Yet that is the decision Plaintiff urges this Court to reach, as the Plaintiff can only state a claim for relief here if the North District of California's approved qualifier—"Check Locally – Not Recycled In Many Communities"—is deceptive to reasonable consumers.

Such a finding by the Northern District of California strongly supports that a reasonable consumer is not deceived by the Product's label. *See Zapadinsky v. Blue Diamond Growers*, 2023 WL 5116507, at *9 (E.D. Wis. Aug. 7, 2023) (finding that three prior courts had considered the product's packaging and found that it would not deceive a reasonable consumer). As such, the FDUTPA claim should be dismissed. *See Cummings v. Growers*, 2023 WL 3487005, at *4 (N.D. Fla. May 15, 2023) (dismissing claim when disclosures "confirm it is implausible that objectively reasonable consumers would think the almonds were actually smoked").

*C. <u>Plaintiff Did Not Suffer Actual Damages.</u>*

For a FDUTPA claim, Plaintiff must allege "actual damages," which "are measured according to the [market value difference] of the product . . . in the condition in which it was delivered and its market value in the condition in which it should have been delivered." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1098 (11th Cir. 2021) (internal quotation omitted). FDUTPA "does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *Id.* And, it requires actual damages that

"directly flow from" the FDUTPA violation. *Marketran, LLC v. Brooklyn Water Enters., Inc.*, 2017 WL 1292983, at *3-4 (S.D. Fla. Jan. 31, 2017).

As detailed in Section I.A, *supra*, just as Plaintiff cannot support an "injury in fact," Plaintiff's conclusory allegations and speculation that he paid a premium price or "would not have paid as much as he did" are insufficient to support actual damages. *Clear Marine Ventures Ltd. v. Brunswick Corp.*, 2010 WL 528477, at *4-5 (S.D. Fla. Feb. 11, 2010) (no damages where alleged change in value was based on "mere speculation"). In *Meyer v. Colavita USA Inc.*, the court dismissed a similar FDUTPA claim relying on a study evaluating what qualifies as "extra virgin olive oil." 2011 WL 13216980, at *2-3 (S.D. Fla. Sept. 13, 2011). Plaintiffs alleged that the olive oil did not pass some of the study's tests, attempting to "bolster their allegations [with] anecdotes of adulterated or counterfeit olive oil." *Id.* at *2. Finding the claim wholly defective, the Court dismissed the claim for failure to allege damages, stating the plaintiffs did "not plead facts demonstrating that they paid 'X' dollars for what they thought was extra virgin olive oil that in fact turned out to be simply virgin olive oil worth 'Y' dollars." *Id.* at *5. A plaintiff cannot "base their lawsuits on unwarranted deductions of fact and conclusory allegations in the hope that discovery will in fact validate the foundation for their claims." *Id.*

Similarly, Plaintiff's damages rely only on general speculation. *See supra,* Section I.A. Plaintiff attempts to support his claim with vague references to an "SCS Engineers" study regarding the recyclability of the Product and purported statements from unidentified "waste management companies and local governments." Compl. ¶¶ 27-38. However, these studies and statements do not support the conclusion that Plaintiff paid "X" dollars for what he thought was a recyclable Product but was actually worth "Y" dollars. Absent any specific allegations, Plaintiff's claim of damages amounts to pure speculation seeking to recover for "subjective feelings of disappointment," and the FDUTPA claim should be dismissed. *See Marrache*, 17 F.4th at 1101.

**III. Plaintiff's Multi-State Consumer Protection Statute Claim (Count II) Is Improper.**

Count II is titled "Violation of State Consumer Protection Statutes," and, in a single claim, Plaintiff purports to bring claims under the listed consumer protection statutes because those statutes "provide a basis for redress to Plaintiff and the Multi-State Consumer Protection Class based on Defendant's [alleged] fraudulent, deceptive, unfair, and unconscionable acts, practices and conduct" enacted in the states included in the Multi-State Class. Compl. ¶ 57. Based on this conclusory allegation, Keurig's "marketing of the Products violates these prohibitions," and the

members of the Multi-State Class purportedly "suffered ascertainable losses." *Id.* ¶¶ 59, 64. The Multi-State Class purports to bring claims on behalf of the citizens of nineteen states under nineteen state consumer protection statutes. *Id.* ¶ 40 n. 43.

Such pleading—a single count incorporating 37 fact paragraphs and bringing claims under nineteen different consumer protection statutes—is an impermissible shotgun pleading. *See In re Tupperware Brands Corp. Sec. Litig.*, 2023 WL 5091802, at *8 (11th Cir. Aug. 8, 2023) ("A complaint that 'commits the sin of not separating into a different count each cause of action or claim for relief' is a shotgun pleading."). Count II fails to connect the factual allegations to the elements of each state's consumer protection statute, making it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Id.*

As other courts have found, shotgun pleading "is especially problematic with respect to pleading numerous causes of action under a variety of state consumer protection statutes because the type and degree of protection . . . varies extensively." *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1016 (S.D. Iowa 2009). For example, the California Consumer Legal Remedies Act, incorporated into Count II, requires that the plaintiff plead reliance. *In re Apple Processor Litig.*, 2023 WL 5950622, at *1 (9th Cir. Sep. 13, 2023). However, the Illinois Consumer Fraud Act does not require reliance, which Plaintiff also seeks to bring under Count II. *See Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996). Because each of the nineteen consumer protection statutes involves different elements and different allegations, by failing to tie the specific factual allegations to the grounds for his claims, Plaintiff has made it "impossible for [Keurig] to assess what [Plaintiff] ultimately hopes to prove." *Brownell v. Starbucks Coffee Co.*, 681 F. Supp. 3d 27, 39 (N.D.N.Y. 2023). Count II must be dismissed for this reason alone.[9]

Regardless, Plaintiff cannot bring claims under state consumer protection statutes if he did not suffer an injury in that state. The majority of the statutes listed in Plaintiff's multi-state class require that the Plaintiff's injury or the Defendant's wrongful conduct be tied to those states.[10] Plaintiff has not alleged injury or wrongful conduct in any of these other states. Thus, based on the alleged facts, these statutes are inapplicable, and Plaintiff cannot maintain the claims in Count II.

---

[9] If Plaintiff's FDUTPA claim is dismissed, Count II fails for the same reasons.

[10] *See, e.g.*, *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919 (Ill. 2007) ("[T]he Illinois Consumer Fraud Act applies only to fraudulent transactions which take place 'primarily and substantially' in Illinois.").

**IV. Plaintiff's Fraud Claim (Count III) Is Deficient.**

To plead a claim for fraud, Plaintiff must allege: "(1) misrepresentation of material fact; (2) by someone who knew or should have known of the statement's falsity; (3) with intent that the representation would induce another to rely and act on it; and (4) injury suffered in justifiable reliance on the representation." *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1224 (S.D. Fla. 2010). As already demonstrated, Plaintiff has failed to plead a misrepresentation of material fact and an injury suffered in justifiable reliance on the representation, *see* Section II.A. Plaintiff's fraud claim thus fails for the same reason as his FDUTPA claim. *See Jackson v. Anheuser-Busch InBev SA/NV, LLC*, 2021 WL 3666312, at *17 (S.D. Fla. Aug. 28, 2021) (dismissing fraud and FDUTPA claims based on the same pleading deficiencies).

The fraud claim fails for an additional reason—Plaintiff has not alleged intent with sufficient particularity. The sole allegation regarding intent is conclusory: "Defendant knowingly made material misrepresentations and omissions regarding the Products . . . in order to induce Plaintiff . . . to purchase the Products." Compl. ¶¶ 68-69. This allegation, that Defendant made the misrepresentation to sell the Product, does not pass muster. In *Cummings*, the court dismissed a similar fraud claim brought by attorney Wright for failure to plead intent. 2023 WL 3487005, at *6. The plaintiff did not allege "facts plausibly showing deceptive intent" but "merely allege[d] that [the defendant] knew 'the [p]roduct was not consistent with its representation.'" *Id.* Because it is "not enough to allege only that it had knowledge of falsity," the fraud claim was dismissed. *Id.* In this case, the Court should likewise dismiss the fraud claim for failure to allege intent.

**V. Plaintiff Has Not Satisfied Rule 9(b).**

Even if Plaintiff could state a claim, the FDUTPA and fraud claims lack requisite particularity.[11] Under Rule 9(b), a party "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." *Dixon v. Allergan USA, Inc.*, 2015 WL 12915671, at *3 (S.D. Fla. May 28, 2015). "The Rule's particularity requirement is not satisfied by conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud." *Id.* (citation omitted). "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir.

[11] Rule 9(b) applies to these claims because they sound in fraud. *See Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1294 (11th Cir. 2025) (FDUTPA); *Cutler v. Voya Fin., Inc.*, 2019 WL 1112379, at *2 (S.D. Fla. Jan. 15, 2019) (fraud).

2005). To sufficiently state misrepresentation claims, Plaintiff must allege: (1) what statements were made in specific documents, (2) the time and place of each such statement and the person responsible for making it, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendant obtained as a consequence of the fraud. *Sanchez v. Team Health, LLC*, 2020 WL 12188439, at *3 (S.D. Fla. May 18, 2020).

Although he describes generally his alleged interaction with Keurig, "[i]n recounting these experiences and interactions, Plaintiff[] omit[s] the 'who, what, when, where, and how' of [the] alleged misconduct." *Jackson*, 2021 WL 3666312, at *12. The claims revolve around alleged misrepresentations on the Product's label when he purchased the Product, but those purchases are not specifically alleged. As an initial matter, Plaintiff's FDUTPA and fraud claims only incorporate paragraphs 14-37 into the claims, Compl. ¶¶ 47, 67, rendering them devoid of any allegations regarding Plaintiff's purchases, including the what, where, and when, *see id.* ¶¶ 47-55 (Count I), *id.* ¶¶ 67-73 (Count III). These claims, then, merely reciting their elements, are deficient.

Even if the Court looked at the unincorporated allegations, Plaintiff only states the elements in generic terms. In paragraph 39, Plaintiff attempts to walk through the "who, what, when, where, and how" under a heading titled "Fed. R. Civ. P. 9(b) Allegations," but does so by only reciting the basic claim elements without any specifics. *Id.* ¶ 39. For "when," he only states Keurig "engaged in this deceptive conduct continuously throughout the applicable statutory periods, including at the point of sale." *Id.* ¶ 39(c). These conclusory allegations that Keurig could have made the purported misrepresentations at anytime and anyplace, do not satisfy Rule 9(b).

Turning to the unincorporated allegations about Plaintiff specifically, Plaintiff states in a generic fashion that he purchased the Product "for his personal use within the applicable statute-of-limitations period in Monroe County, Florida [and] Plaintiff's most recent purchase was at a Publix Store for approximately $13.99 within the last 3 months." Compl. ¶ 9. But this vague allegation does not provide requisite details as to the "where" all of the purchases occurred. *Id*. As for "when" Keurig made the statement, Plaintiff merely states that he purchased the Product beginning in 2024 without even attempting to quantify the number of times he purchased the Product or the rate at which he purchased the Product, let alone the specific dates. *Id*. Providing an undefined period in which one or more purchases may have been made is insufficient. These general allegations are plainly insufficient to satisfy the heightened pleading standards of Rule 9(b). *See Dixon*, 2015 WL 12915671, at *4 (Rule 9(b) dismissal proper where claims lacked time

and location of defendant's alleged misrepresentations).

"[B]are allegation[s] of reliance on alleged misrepresentations. . ., bereft of any additional detail, will not suffice under Rule 9(b)." *Jackson*, 2021 WL 3666312, at *16. Plaintiff does just that in simply alleging that he "read and relied" on the "front" of the Product's packaging. Compl. ¶¶ 39(d)-(e). He does not explain how the label misled him, nor can he because in reading the front label he would know exactly what is meant by "recyclable" as indicated by the asterisk. The allegations that, in general, "Keurig's own research showed that consumer worries about the environmental impact of K-Cup pods affected purchasing behavior" does not support the proposition that Plaintiff himself relied on the Product's label statements when purchasing the Product.[12] *Id.* ¶ 14; *see D.H.G. Props. v. Ginn Cos., LLC*, 2010 WL 5584464, at *6 (M.D. Fla. Sep. 28, 2010) (Rule 9(b) not met where "very few allegations actually purport to describe facts or events relating to Plaintiff, or Plaintiff's purchase of the property at issue."). And, although "demand for environmentally friendly products is increasing, and a majority of U.S. consumers prefer such products and are willing to pay more for them," this general preference does not support that in purchasing the Product, Plaintiff himself relied on the label statements or was misled by them. Compl. ¶¶ 23-24. Therefore, because these claims are not alleged with sufficient particularity, dismissal under Rule 9(b) is appropriate.

## VI. The Class Allegations Should Be Stricken.

Where a complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may, prior to discovery, move to strike class allegations pursuant to Federal Rule of Civil Procedure 12(f). Federal Rule of Civil Procedure 23 directs courts to address class issues "[a]t an early practicable time," and permits them to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(c)(1)(A), (d)(1)(D).

Accordingly, "the trial court has an independent obligation to decide whether an action was properly brought as a class action, even where neither party moves for a ruling on class certification." *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir. 1981) (affirming district court's *sua sponte* denial of class certification). If the action is not properly

[12] Similarly, alleging that Keurig emphasizes sustainability and recyclability in general marketing, separate and apart from the Product label, does not support reliance. Compl. ¶¶ 20-22. There is no allegation that Plaintiff read such statements prior to purchasing the Product.

brought as a class action, a court may dismiss the alleged class claims, or strike the class allegations. *See Kubany by Kubany v. Sch. Bd. Of Pinellas Cnty.*, 149 F.R.D. 664, 665-66 (M.D. Fla. 1993); *Lawson v. Life of the South Ins. Co.*, 286 F.R.D. 689, 701 (M.D. Ga 2012) (granting motion to strike class allegations where pleadings did not indicate that a class action could be certified).

"Where it is not administratively feasible for the court to identify class members, no class will be deemed to exist." *Conigliaro v. Norwegian Cruise Line Ltd.*, No. 05-21584-CIV, 2006 WL 7346844, at *2 (S.D. Fla. Sept. 1, 2006). "In particular, courts have declined to certify a class where the proposed definition would not enable identification of class members short of individualized fact-finding." *Id.* Such a determination can be made on the face of a complaint. *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997) ("This failure of predominance is readily apparent from a reading of the *Jackson* plaintiffs complaint.").

Plaintiff has amended his class allegations to exclude any member of the *Smith* class. If a class was to be certified, to properly exclude such individuals, the administrator would be required to determine that each class member did not purchase the Product prior to 2023, leading to individual fact-specific inquiries for every class member. Such a class is untenable, and the Court should strike the class allegations. *Roberson v. Health Career Inst. LLC*, No. 22-CV-81883, 2024 WL 5690285, at *18 (S.D. Fla. Aug. 21, 2024) (class inappropriate when, to adjudicate count, fact-finder would have to engage in fact specific inquiry as to each class member).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated: June 2, 2026.

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**

333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By: *Evelyn A. Cobos*
EVELYN A. COBOS
Florida Bar No. 92310
Email: evelyn.cobos@gtlaw.com
orizondol@gtlaw.com
MiaLitDock@gtlaw.com

EMILEY F. PAGRABS
Florida Bar No. 1030834
Email: pagrabse@gtlaw.com
michelle.cruz@gtlaw.com
MiaLitDock@gtlaw.com

*Attorneys for Defendant, Keurig Dr. Pepper, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 2nd day of June, 2026, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: *Evelyn A. Cobos*
EVELYN A. COBOS